# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **BRANDIE CUNNINGHAM,** | § § | |
| **Plaintiff,** | § § § | **CIVIL ACTION NO. 6:19-CV-00018-JDL** |
| **v.** | § § | |
| **WOOD COUNTY, THOMAS CASTLOO,** | § § § | |
| **Defendants.** | § § | |

## REDACTED MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff Brandie Cunningham's ("Plaintiff") and Defendants Wood County and Sheriff Thomas Castloo's (collectively "Defendants") cross motions for summary judgment (Doc. Nos. 39, 42). The matter has been fully briefed.[1] For the reasons stated herein, the Court **ORDERS** that Defendants' motion (Doc. No. 39) is **GRANTED-IN-PART** and **DENIED-IN-PART** and that Plaintiff's motion (Doc. No. 42) is **DENIED**.

## BACKGROUND

Plaintiff initiated this action pursuant to 42 U.S.C. § 1983 on January 16, 2019, alleging violations of her First and Fourteenth Amendment rights and Texas Government Code §§ 6.14.021–.32. (Doc. No. 1 at ¶¶ 21, 26, 27.) Plaintiff alleges that she was terminated by Defendants for engaging in speech "concerning a matter of public concern"—namely, that deputy sheriff David McGee submitted falsified or altered documents with his application for employment with Hopkins County. *Id.* at ¶ 21. Defendants allege that Plaintiff was fired for "untruthfulness and for violating the Sheriff's Office's chain of command several times" after

---

[1] Doc. Nos. 49, 56, 64 (Plaintiff's Motion); Doc. Nos. 50, 58, 62 (Defendants' Motion).

communicating her allegations about McGee to individuals outside her chain of command and withholding information about those communications during a meeting with Sheriff Castloo. (Doc. No. 39 at 7.) Because the parties have conflicting narratives, many of the material facts in this action are in dispute. The Court's approximation of the material facts that are undisputed is as follows:

1. Plaintiff was hired as a deputy sheriff in the Wood County Sheriff's Office in April 2016. (Ex. A at 144:18–25.)

2. Defendant Castloo became the elected sheriff of Wood County on January 1, 2017. (Ex. A at 89:4–7.)

3. Plaintiff's commission to serve as a deputy was renewed upon the election of Sheriff Castloo. (Ex. A at 148:2–5.)

4. Prior to being hired in Wood County, Plaintiff worked at the Hopkins County Jail with McGee. (Ex. A at 145:3–6.)

5. Plaintiff was asked to review McGee's DD214 discharge form[2] by her superior, Sergeant Paul Finmore. (Ex. A at 146:1–8.)

6. Plaintiff, after reviewing the DD214, concluded that it appeared altered or falsified. (Ex. A at 168:6–8, 13–17.)

7. While Plaintiff was still employed with Hopkins County, McGee began working at the Wood County Jail. (Ex. A at 66:18–20, 146:9–12.)

8. When she came to work for Wood County, Plaintiff had reported her suspicions regarding McGee's DD214 to several individuals. (Ex. A at 146:13–21.)

9. On January 18, 2017, Plaintiff approached Investigator Crouse and asked about how she could file a federal crime. (Ex. A at 148:24–149:8, 150:1–13.)

10. Specifically, she believed Mr. McGee's DD214 had been altered and that she had an obligation as a peace officer to report it. (Ex. A at 149:9–14.)

---

[2] The DD214 is a discharge form used by all branches of the United States military and has the same function as the F-5 discharge form for law enforcement agencies. It indicates whether a servicemember separating from military service is being released with an honorable, general, or dishonorable discharge.

11. Plaintiff and Investigator Crouse spoke to Sheriff Castloo on January 19, 2017, and she relayed her suspicions about McGee's alteration of his DD214 to Sheriff Castloo. (Ex. A at 90:2–6.)

12. Plaintiff told the Sheriff that it had been two or more years since she had seen McGee's DD214 during her time with Hopkins County, and that she remembered concluding that the discharge codes did not match, indicating alteration. (Ex. A at 168:18–169:2.)

13. After Plaintiff reported her concerns to Sheriff Castloo, she informed her chain of command what she had reported. (Ex. A at 150:24–151:5, 192:22–25.)

14. Her chain of command consisted of Aaron Warren, Lieutenant Burge, Captain Holland, Chief Deputy Sanders, and Sheriff Castloo. (Ex. A 164:4–8.)

15. During shift change, she also informed Justin Bowring that she had made a report about McGee's DD214 to Sheriff Castloo. (Ex. A at 152:9–21.)

16. The day after she made her initial report to Sheriff Castloo (i.e., on January 20) she met again with Sheriff Castloo and Bobby Sanders, the chief deputy, where she was questioned about who she had communicated with regarding her report about McGee. (Ex. A at 154:1–6.)

17. Plaintiff told Sheriff Castloo that she had informed her chain of command, but did not mention telling Deputy Bowring. (Ex. A at 154:7–20.)

18. Plaintiff also did not inform Sheriff Castloo that she had spoken of her suspicions regarding McGee with Terry Bevill (Quitman Police Department) and Miles Tucker, Jacob Richardson, Kyle Hinton, and Dustin Moffit (investigators in the previous Wood County Sheriff's Office administration). (Ex. A. at 169:11–170:5.)

19. Plaintiff was called later in the evening by Lieutenant Burge and told to report to the Sheriff's office at 9:00 on Monday morning, January 23, 2017. (Exhibit A at 156:10–13; 166:10–11, 176:3–7.)

20. At that meeting, she met with Chief Deputy Sanders, Lieutenant Burge and Captain Holland and was terminated. (Exhibit A at 156:17–21.)

21. ████████████████████████████████████████
████████████████████████████████████████
████████████████████

22. Shortly after Plaintiff's termination, McGee was arrested and prosecuted for falsifying TDCJ documents relating to an inmate. (Ex. A at 136:11–13, 160:4–8.)

23. Plaintiff had no further discussion with Sheriff Castloo after their discussion on January 20, 2017. (Exhibit A at 160:9–11.)

Regarding the events of the meeting with Sheriff Castloo and Bobby Sanders, nearly all the facts before the Court are disputed by the parties. Plaintiff claims that during that meeting, "Sheriff Castloo yelled at her and she was basically told that she was a liar when she said McGee altered his DD214, though she protested that she believed it was altered." (Doc. No. 42 at 5, Ex. A at 154:7–20; 178:23–179:8.) Plaintiff maintains that she was not warned during that meeting that her conduct was under investigation or informed that she was in violation of any Wood County Sheriff's Department policy. *Id.* at 5, Ex. A at 110:17–21; 62:22–24; 63:9–15. Sheriff Castloo informed Plaintiff that she would be fired if she was lying about her report, but Plaintiff claims that she was "being truthful during the meeting and had no intent to deceive or withhold information from the Sheriff." *Id.* at 5.

After the meeting was over, Plaintiff contends that she then remembered her conversation with Deputy Bowring and tried to contact Sheriff Castloo through Captain Holland on that same day, January 20, but could not successfully reach them to supplement her report. *Id.*, Ex. A at 156:1–7, 163:7–11, 191:22–25. She was later called in to a meeting on January 23, 2017, where she was terminated without being "allowed to provide a response to any allegations," being given anything in writing regarding her termination, or being informed of her entitlement to a signed, written statement regarding the allegations against her. *Id.* at 6.

Defendants contend that after Plaintiff reported her suspicions regarding McGee's DD214 to Sheriff Castloo, he immediately initiated an investigation and "found no evidence that the DD214 was altered." (Doc. No. 39 at 4, Ex. A at 108:14–20, 109:6–8, 133:2–5.) During this investigation, Sheriff Castloo spoke with Hopkins County officials and allegedly discovered that "there'd been bad blood between…[Plaintiff] and… McGee for quite some time." *Id.* at 5, Ex. A

at 92:13–20. Defendants characterize Plaintiff's communications regarding her report as "rumormongering," and claim that while Sheriff Castloo was investigating her claims, she was "busily…spreading rumors" about McGee. *Id.*

When Sheriff Castloo called Plaintiff back in for a second meeting concerning her report, Defendants claim that he asked her who she had spoken with, knowing that she had told many individuals, and that she lied by omitting Deputy Bowring, among others. *Id.* at 6. Sheriff Castloo then gave Plaintiff "one more chance to tell the truth," and she did not admit to telling Deputy Bowring or any others outside of her chain of command. *Id.* at 7, Ex. A at 50:15–22, 62:25, 63:1–5, 77:5–10, 131:25, 132:1–13. Because Sheriff Castloo was then aware that Plaintiff had lied, he instructed Chief Deputy Sanders to prepare the necessary documents for her termination. *Id.* at 7.

Plaintiff alleges multiple causes of action against Defendants, including: (1) violation of her right to engage in speech concerning a matter of public concern under the First Amendment; (2) violation of her right to equal protection under the Fourteenth Amendment; and (3) violations of her right to due process under the Fourteenth Amendment and Texas Government Code Chapter 614, subchapter B. *Id.* at 5–6. Plaintiff is seeking partial summary judgment as to her due process claims under the Fourteenth Amendment and Texas Government Code Chapter 614. *See* Doc. No. 42. Defendants' motion seeks summary judgment on all claims. *See* Doc. No. 39.

## LEGAL STANDARD

A motion for summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). The Supreme Court has interpreted the plain language of Rule 56 as

mandating "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting *Celotex*, 477 U.S. at 323–25). A fact is material if it might affect the outcome of the suit under the governing law. *Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999). Issues of material fact are "genuine" only if they require resolution by a trier of fact and if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Merritt-Campbell, Inc.*, 164 F.3d at 961. If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little*, 37 F.3d at 1075.

If the movant meets this burden, Rule 56 requires the opposing party to go beyond the pleadings and to show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *EEOC v. Texas Instruments, Inc.*, 100 F.3d 1173, 1180 (5th Cir. 1996); *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1046–47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by argument, conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a mere scintilla of evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 585 (1986); *Wallace*, 80 F.3d at 1047; *Little*, 37 F.3d at 1075.

When ruling on a motion for summary judgment, the Court is required to view all

justifiable inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *Merritt-Campbell, Inc.*, 164 F.3d at 961. However, the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as modified*, 70 F.3d  26 (5th Cir. 1995). Unless there is sufficient evidence for a reasonable jury to return a verdict in  the opposing party's favor, there is no genuine issue for trial, and summary judgment must be granted.   *Celotex*, 477 U.S. at 322–23; *Anderson*, 477 U.S. at 249–51; *Texas Instruments*, 100 F.3d at 1179.

## DISCUSSION

Defendants are moving for summary judgment on all of Plaintiff's claims. (Doc. No. 39.) Plaintiff is moving for summary judgment on her due process claims under the Fourteenth Amendment and Texas Government Code Chapter 614. (Doc. No. 42.) The Court will therefore begin with the claims that are unique to Defendants' motion.

### I.    Alleged First Amendment Violation

The First Amendment provides protections to U.S. citizens with respect to, *inter alia*, the freedom of speech. U.S. CONST. AMEND. I. The Supreme Court has long held that a public employee does not give up her First Amendment rights by reason of her employment. *See, e.g., Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty*., 391 U.S. 563, 568 (1968). "[E]mployee speech is unprotected if it is not on a matter of public concern (or is pursuant to an employee's job duties), but speech on matters of public concern may be restricted only if 'the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees' outweighs 'the interests of the [employee], as a citizen, in commenting upon matters of public concern.'" *Harris v. Quinn*, 134 S. Ct. 2618, 2642

(2014) (citing *Pickering*, 391 U.S. at 568). To succeed in a First Amendment retaliation claim under § 1983, a public employee must show: "(1) that he suffered an adverse employment action; (2) he spoke as a citizen on a matter of public concern; (3) his interest in the speech outweighs

the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action." *Wilson v. Tregre*, 787 F.3d 322, 325 (5th Cir. 2015) (quoting *Nixon v. City of Houston, Tex.*, 511 F.3d 494, 497 (5th Cir. 2007)).

Defendants do not dispute element (1), that Plaintiff suffered an adverse employment action, and do not discuss element (3) in any detail nor appear to dispute it. (*See* Doc. No. 39 at 10–13; Doc. No. 50 at 9.) Defendants argue that Plaintiff's First Amendment claim must fail because she was not speaking as a citizen, and her speech did not precipitate her termination because she was fired on other grounds. (Doc. No. 39 at 13.)

### a. Citizen Speech

"[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). Whether a plaintiff was speaking as an employee or citizen is a question of law for the courts to decide. *Graziosi v. City of Greenville, Miss.*, 775 F.3d 731, 736 (5th Cir. 2015) (citing *Davis*, 518 F.3d at 315).

The Supreme Court has spoken on this issue in both *Garcetti v. Ceballos*, 547 U.S. 410 (2006), and *Lane v. Franks*, 573 U.S. 228 (2014), but saw "no occasion to articulate a comprehensive framework" for determining the contours of employee speech "in cases where there is room for serious debate." *Garcetti*, 547 U.S. at 424. The Court has instead directed that the inquiry "is a practical one," focusing on whether the speech was made "within the scope of

the employee's professional duties." *Id.* at 424–25. Factors such as job descriptions, the fact that the speech concerns the subject matter of employment, and whether the employee expresses herself in the office are not solely dispositive of a lack of First Amendment protection. *Id.* at 420, 424–25. Further, the "mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech." *Lane*, 573 U.S. at 240.

In applying the Supreme Court's precedent in *Garcetti* and *Lane*, the Fifth Circuit has further defined "pursuant to official duties" as "activities undertaken in the course of performing one's job." *Rogers v. City of Yoakum*, 660 Fed. App'x 279, 283 (5th Cir. 2016). The Court should consider factors such as "job descriptions, whether the employee communicated with coworkers or with supervisors, whether the speech resulted from special knowledge gained as an employee, and whether the speech was directed internally or externally." *Id.*; *Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir. 2008).

Defendants argue that, as a matter of law, Plaintiff was not speaking as a citizen when she reported McGee's alleged illegal activity. (Doc. No. 39 at 13.) Defendants point to a line of Fifth Circuit cases in which law enforcement officers who reported alleged wrongdoing were not found to have spoken as a citizen. *Wilson*, 787 F.3d. 322; *Rogers*, 660 Fed. App'x 279; *Gibson v. Kilpatrick*, 773 F.3d 661 (5th Cir. 2016); *Hurst v. Lee Cnty., Miss.*, 764 F.3d 480 (5th Cir. 2014). *Wilson* involved a chief sheriff's deputy who reported potential legal problems stemming from the county's system of videotaping interviews with criminal suspects to the district attorney's office and the Louisiana State Police. *Wilson*, 787 F.3d at 324. The Fifth Circuit held that the deputy's speech was not protected under the First Amendment because he was "simply reporting potential criminal activity up the chain of command." *Id.* at 325. In *Rogers*, a chief of police who

reported the city attorney's suspected misconduct to the Texas Rangers was held to have acted within the scope of his ordinary duties because communication with outside law enforcement agencies was considered part of responsibilities as an employee. *Rogers*, 660 Fed. App'x at 283.

Similarly, in *Gibson*, a chief of police reported the mayor's misuse of the city's gasoline card to the FBI, DEA, Mississippi Office of the State Auditor, and Mississippi Attorney General's office, and was later terminated after a campaign of harassment by the mayor. *Gibson*, 773 F.3d at 664–65. The Fifth Circuit, despite noting that Gibson reported the mayor's wrongdoing to external sources, found that his speech fell within his official duties of "the prevention and detection of crime…[and] the apprehension of criminals." *Id.* at 671 (quoting Miss. Code. Ann. § 45-6-3(c)).

Plaintiff argues that her report of suspected corruption within the Wood County Sheriff's Office is indisputably citizen speech on a matter of public concern. (Doc. No. 50 at 10.) Noting that the mere fact that the information contained within her speech was gained through public employment does not automatically render that speech within the scope of her official duties, Plaintiff directs the Court's attention to *Griffin v. City of New York*, a case from the Eastern District of New York, and *Davis v. McKinney*, a Fifth Circuit case, to support her contention. *Id.* at 11 (citing *Griffin v. City of New York*, 880 F. Supp. 2d 384, 399 (E.D.N.Y 2012); *Davis*, 518 F.3d at 313). Both the *Griffin* and *Davis* courts held that the plaintiff-employees spoke as citizens in reporting wrongdoing outside of their respective chains of command. *Griffin*, 880 F.Supp. 2d at 399; *Davis*, 518 F.3d at 313.

Despite Plaintiff's contentions, her case is distinguishable from that of the *Griffin* and *Davis* plaintiffs. In *Griffin*, the plaintiff-officer relayed his reports of corruption to the NYPD Internal Affairs Bureau—an independent entity specifically created to receive reports of potential

NYPD corruption from both NYPD officers and citizens. *Griffin*, 880 F.Supp. 2d at 399. The court indicated that, had the plaintiff-officer reported only to NYPD's internal Investigation Unit, his conduct "may be considered synonymous with internally reporting to superiors." *Id.* (noting that "reporting to [the Internal Affairs Bureau] is an entirely different story"). The court's holding in *Davis* further illustrates this distinction. *Davis*, 518 F.3d at 315–17. The plaintiff, a former university employee, was held to have spoken as a citizen in reporting incidents of child pornography on university computers to the FBI and alleged discriminatory practices to the Equal Employment Opportunity Commission. *Id.* The court noted that these reports were undoubtedly beyond the scope of the plaintiff-employee's job duties, as her employment did not involve investigations of crime or discrimination and her reports were made directly to entities that regularly investigate such matters. *Id.* at 316.

Here, Plaintiff reported her suspicions that McGee's DD214 was altered to Defendant Castloo and others after being asked to perform a review by her supervisor at the Hopkins County Jail. (Doc. No. 50 at 4–6.) Unlike the plaintiffs in *Griffin* and *Davis*, Plaintiff did not report her allegations of wrongdoing to an outside investigating entity, but rather to individuals within the Wood County Sheriff's Office (Investigator Crouse, Defendant Castloo, and Deputy Bowring), previous Wood County Sheriff's Office administration (Miles Tucker, Jacob Richardson, Kyle Hinton, and Dustin Moffitt), and the Hopkins County Jail (Sergeant Paul Finmore). (Doc. No. 50 at 4–6.) Plaintiff's actions taken in reporting her suspicions regarding McGee's DD214, when viewed as a whole, are more similar to those of the plaintiff-officers in *Gibson*, *Wilson*, and *Rogers* than those of the *Griffin* or *Davis* plaintiffs. Law enforcement officials are tasked with detecting, reporting, and preventing crimes, including the type of crime Plaintiff alleges McGee committed here. Indeed, Plaintiff testified that she felt it was her

"obligation to report" McGee's alleged alterations of his DD214 as a peace officer. (Ex. A at 149:9–14.)

While Plaintiff argues that, like the plaintiff-officer in *Griffin*, she reported her suspicions to those outside her direct chain of command, the Court is not convinced that this transforms her speech to that of a citizen. Each time she relayed her concerns about McGee, she was doing so to either apprise a superior officer of the situation or inform an individual with supervisory power over McGee of her suspicions. (Doc. No. 50 at 4–6.) Indeed, Plaintiff testified that she only informed Deputy Bowring of her report concerning McGee "in case she was needed during the evening hours" regarding that report, not so Deputy Bowring would be informed regarding the allegations or take any action. (Doc. No. 42 at 4, Ex. A at 152:25–153:5.) The *Griffin* opinion heavily relied upon by Plaintiff cites Second Circuit precedent that states: "[w]e have no difficulty concluding that [plaintiff's] speech was made not as a 'citizen' but, rather, pursuant to [plaintiff]'s official duties" where the plaintiff's speech consisted only of "pass[ing] along…concerns…to the head of [plaintiff]'s division" about other employees. *Huth v. Haslun*, 598 F.3d 70, 74 (2nd Cir. 2010). Viewing all of Plaintiff's actions as a whole, the Court finds as a matter of law that she was not speaking as a citizen when she reported her allegations concerning McGee. Plaintiff's speech is therefore unprotected by the First Amendment for the purposes of her claim.

**b. Causation**

Plaintiff further argues that a fact question exists as to the fourth element—whether Plaintiff's speech motivated Defendants' decision to terminate her. (Doc. No. 50 at 12.) Because the Court has determined that Plaintiff's speech was not citizen speech protected by the First

Amendment, whether a fact question exists regarding causation is irrelevant. The Court therefore **GRANTS** Defendant's motion (Doc. No. 39) as to Plaintiff's First Amendment claims.

## II.     Alleged Fourteenth Amendment Violations

As discussed above, Plaintiff has alleged a violation of her right to equal protection under the Fourteenth Amendment and violations of her right to due process under the Fourteenth Amendment and Texas Government Code Chapter 614. Both Plaintiff and Defendants have filed motions seeking summary judgment on Plaintiff's due process claims. (Doc. Nos. 39, 42.) Defendants also move for summary judgment on Plaintiff's equal protection claim. (Doc. No. 39 at 16–20.) Accordingly, the Court will turn first to the equal protection claim raised solely in Defendants' motion.

### a.   Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States guarantees, in pertinent part, that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. AMEND. XIV, § 1. A plaintiff may bring a cause of action for violation of her right to equal protection under § 1983. *Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539, 550 (5th Cir. 1997). In order to do so, Plaintiff must establish: (1) she was deprived of her Constitutional right to equal protection (2) under color of state law. *Lawellen v. City of Beaumont*, 394 Fed. App'x 38, 42 (5th Cir. 2010). Defendants do not dispute that at all relevant times, they were acting under color of state law, but contend that Plaintiff has not demonstrated that her right to equal protection was violated. (Doc. No. 39 at 16–20.)

In order to succeed on her equal protection claim, Plaintiff must show that: "(1) she suffered an adverse employment action, (2) it was based on sex discrimination, and (3) a policy or custom of the [Sheriff's Department] was the motivating force behind that sex-based adverse action." *Lewallen*, 394 Fed. App'x at 42–42. It is undisputed that Plaintiff suffered an adverse employment action—she was terminated—but the parties dispute the reasons for her termination. Defendants contend that Plaintiff was terminated for lying and violating her chain of command, not because of her gender. (Doc. No. 42 at 19.) Plaintiff argues that she was terminated in retaliation for her speech against McGee; indeed, this contention forms the basis of her First Amendment claim discussed above. (Doc. No. 50 at 1.) Plaintiff must show that her termination was based on sex discrimination in order to succeed on her equal protection claim, but fails to point to any evidence that her termination was based in any way on her gender. *Lewallen*, 394 Fed. App'x at 42–42. In fact, Plaintiff does not even attempt to demonstrate any logical connection between her protected status as a female peace officer and the events of her termination, instead arguing that she was treated "differently than similarly situated employees" in the process of her termination. *See* Doc. No. 42 at 15–16. As Plaintiff has provided no evidence of sex discrimination, her equal protection claim must fail as a matter of law. Accordingly, the Court **GRANTS** Defendants' motion (Doc. No. 39) as to Plaintiff's equal protection claim.

### b. Due Process

The Fourteenth Amendment to the Constitution of the United States guarantees, in pertinent part, that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. AMEND. XIV, § 1. Section 1983 provides a cause of action against an individual who, acting under color of state law, has deprived a person of a federally protected

statutory or constitutional right. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 426 U.S. 40, 49–50 (1999). Therefore, to prevail on her Fourteenth Amendment claims, Plaintiff must establish: (1) a deprivation of a property or liberty interest (2) under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 536–37 (1981). The parties have filed cross motions on Plaintiff's due process claims. (Doc. Nos. 39, 42.)

i. *Failure to provide written complaint under Texas Government Code Chapter 614*

Plaintiff argues that Defendant Castloo committed a per se violation of Texas Government Code Chapter 614, subchapter B, by failing to provide her with written notice that she had violated any Wood County Sheriff's Office department policy prior to her termination. (Doc. No. 42 at 8–9.) Plaintiff claims that this violation deprived her of the due process required under the chapter and she is therefore entitled to summary judgment on this claim. (Doc. No. 42 at 8–12.) Texas Government Code Chapter 614, subchapter B states in relevant part:

Sec. 614.022. COMPLAINT TO BE IN WRITING AND SIGNED BY COMPLAINANT. To be considered by the head of a state agency or by the head of a fire department or local law enforcement agency, the complaint must be:
(1) in writing; and
(2) signed by the person making the complaint.

Sec. 614.023. COPY OF COMPLAINT TO BE GIVEN TO OFFICER OR EMPLOYEE. (a) A copy of a signed complaint against a law enforcement officer of this state or a fire fighter, detention officer, county jailer, or peace officer appointed or employed by a political subdivision of this state shall be given to the officer or employee within a reasonable time after the complaint is filed.

(b) Disciplinary action may not be taken against the officer or employee unless a copy of the signed complaint is given to the officer or employee.

(c) In addition to the requirement of Subsection (b), the officer or employee may not be indefinitely suspended or terminated from employment based on the subject matter of the complaint unless:
(1) the complaint is investigated; and
(2) there is evidence to prove the allegation of misconduct.

Tex. Gov't Code §§ 614.022-.023.

Subchapter B does not further define "complaint," but Plaintiff argues for the definition espoused by some Texas state appellate courts and this Court in one previous decision that defines a complaint as "any allegation of misconduct that could result in disciplinary action" regardless of whether the source is external or internal to the law enforcement agency. (Doc. No. 42 at 9 (citing *Bracey v. City of Killee*n, 417 S.W.3d 94, 99 (Tex. App.—Austin 2013, no pet.)); *see also Henry v. City of Sherman, Texas*, 4:17-CV-00313, 2018 WL 621260, at *3 (E.D. Tex. Jan. 30, 2018), *opinion vacated* 2018 WL 3655168 (E.D. Tex. Apr. 16, 2018).) Under that definition, Plaintiff contends that Defendant Castloo's basis for terminating her employment— whether based upon her dishonesty, as Defendants allege, or her speech, as Plaintiff alleges— rises to the level of a "complaint." (Doc. No. 42 at 11–12.) Therefore, in failing to reduce his complaint to writing and provide a copy to Plaintiff prior to her termination, Defendant Castloo deprived Plaintiff of the due process owed to her under Chapter 614. *Id.* According to Plaintiff, because the undisputed facts demonstrate that Defendant Castloo failed to comply with Chapter 614's requirements, she is entitled to summary judgment. *Id.*

Defendant responds that in order to succeed on her claim, Plaintiff must "identify a legally-cognizable property interest," and the Fifth Circuit "has held that § 614.023(c) does not create a property interest upon which Plaintiff can base her due process claim." (Doc. No. 49 at 10 (citing *Sims v. City of Madisonville, Tex.*, 894 F.3d 632, 642 (5th Cir. 2001).) Because no property right is created in Chapter 614, and no independent action is created from its violation, Defendants argue that they are entitled to summary judgment on Plaintiff's due process claim. (Doc. No. 39 at 25.) Further, Defendants contend that § 614.023 is not implicated when "the head of an agency terminates an officer as a result of conduct he or she observed, rather than as

the result of another's complaint." *Id.* (citing *Rogers*, 660 F. App'x at 285.) Finally, Defendant argues that the doctrines of sovereign immunity and qualified immunity preclude Plaintiff's claims against Defendants Castloo and Wood County. *Id.* at 21, 26–27.

In order to prevail under § 1983, Plaintiff must demonstrate that an individual acting under color of state law deprived her of a federally protected statutory or constitutional right. *Sullivan*, 426 U.S. at 49–50. While Plaintiff argues that Sheriff Castloo's failure to provide her with a written complaint deprived her of "the due process required by § 614.023(b)," she fails to tie this state statutory violation to a federally protected constitutional right. (Doc. No. 42 at 10.) Plaintiff seems to invoke a protected property interest allegedly recognized by the Texas Supreme Court in *Colorado Cty. v. Staff*, 510 S.W.3d 435 (Tex. 2017), but the Fifth Circuit has repeatedly rejected the existence of such a property interest in Chapter 614. *Stem v. Gomez*, 813 F.3d 205, 213 (5th Cir. 2016); *Sims v. City of Madisonville, Tex.*, 894 F.3d 632, 641–42 (5th Cir. 2018). Indeed, despite Plaintiff's arguments to the contrary, the Texas Supreme Court in *Colorado County* unequivocally states that the requirements of Chapter 614 do not "equate to an entitlement to continued employment or a modification of the at-will employment relationship." *Colorado Cty.*, 510 S.W.3d at 446. Plaintiff also does not identify a specific liberty interest that the statute is intended to implicate, but conclusively states that "a due process violation occurred as a matter of law" because she was not given a written complaint prior to her termination. (Doc. No. 42 at 11.) To the extent that Plaintiff argues she was entitled to notice and opportunity to clear her name regarding her reasons for being terminated ████████████████████ ████████, that claim is evaluated separately below.

Plaintiff's conclusory statements that her due process rights were violated under a state statute do not suffice to state a constitutional claim under § 1983. The Court need not wade into

the discussion of what constitutes a "complaint" under the state statute and whether it applies to internal allegations of misconduct because Plaintiff has failed to plead a cognizable constitutional violation. Therefore, her alleged due process claim under Chapter 614 must fail as a matter of law. Accordingly, it is **GRANTS** Defendants' motion (Doc. No. 39) as to Plaintiff's due process claim under Chapter 614 and **DENIES** Plaintiff's motion (Doc. No. 42) as to the same.

### ii.    *Failure to provide a name-clearing hearing*

"If the government discharges an employee amidst allegations of misconduct, the employee may have a procedural due process right to notice and an opportunity to clear his name." *Bledsoe v. City of Horn Lake, Miss.*, 449 F.3d 650, 653 (5th Cir. 2006). In order to be entitled to a name-clearing hearing, Plaintiff must show: (1) she was discharged, (2) stigmatizing charges were made against her in connection with the discharge, (3) the charges were false, (4) she was not provided notice or an opportunity to be heard prior to the discharge, (5) the charges were made public, (6) she requested a hearing to clear her name, and (7) the employer denied the request. *Id.*

Plaintiff moves for summary judgment on this claim and contends that each of the required elements are established by the undisputed facts. (Doc. No. 42 at 12–13.) Defendants respond that Plaintiff cannot produce evidence on elements (3), (4), (6) and (7): that the charges against her were false, that she was not provided notice or opportunity to be heard prior to her termination, and that she requested a hearing to clear her name that Defendants then denied. (Doc. No. 49 at 12–14.) Defendants argue that Plaintiff has admitted to being untruthful and violating her chain of command, rebutting element (3). *Id.* at 12 (citing Ex. A, 154:7–20, 162:11–25, 163:1–3, 164:9–25, 165:1–13, 169:3–25, 170:1–25, 171:1–25, 172:1–15.)

Defendants further contend that Sheriff Castloo "gave [Plaintiff] another chance to answer him truthfully" before dismissing her from his office, which they argue satisfies the element of notice and opportunity to be heard prior to termination. *Id.* at 13. Lastly, Defendants note that "Plaintiff never requested a name-clearing hearing, and therefore no Defendant ever denied this request." *Id.*

It is undisputed that Plaintiff was discharged and that stigmatizing charges—███ ████████████████████████████████████████████████—were made against her. (Doc. No. 50, Ex. A at 157:6–9.) The Court therefore first turns to element (3): whether the charges were false. *Bledsoe*, 449 F.3d at 653. While the parties each argue that summary judgment is appropriate on this claim, the Court finds that fact issues exist as to element (3). While the record does contain a number of undisputed facts, the parties have two wholly opposing narratives regarding Plaintiff's termination. Defendants contend that Plaintiff knowingly was untruthful to Sheriff Castloo, violated her chain of command, and participated in rumormongering; Plaintiff argues that her omissions were merely accidental and that Defendants' reasons for her termination are pretext for the fact that she was terminated in retaliation for her speech against McGee. (Doc Nos. 39, 42.)

"Credibility determinations have no place in summary judgment proceedings"—the Court's duty is to determine if there are genuine issues of fact for trial, not weigh the evidence to determine the truth of the matter. *Richardson v. Oldham*, 12 F.3d 1373, 1379 (5th Cir. 1994). Viewing the facts in the light most favorable to the non-moving party, fact issues exist as to element (3) that preclude summary judgment for either party. While Defendants repeatedly allege that Plaintiff was discharged for lying and violating her chain of command, which they claim is supported by the summary judgment evidence, Plaintiff maintains that she did not have

any intent to deceive or withhold information from Sheriff Castloo and fully believed she was being truthful during their meeting. (Doc. No. 39 at 15 (citing Ex. A at 50:15–22, 62:25, 63:1–5, 77:5–10, 131:25, 132:1–13); Doc. No. 56 at 6 (citing Ex. A, 157:19–21).) It was only later, after her conversation with Sheriff Castloo, that Plaintiff testifies she remembered sharing her report to Sheriff Castloo with Deputy Bowring. (Doc. No. 56 at 6 (citing Ex. A at 180:1–4).)

When the parties tell two opposing stories, unless one party's version is "blatantly contradicted by the record, so that no reasonable jury could believe it," the judge should take the non-movant's facts as true for summary judgment purposes. *Koerner v. CMR Construction & Roofing, L.L.C.*, 910 F.3d 221, 227–28 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)) (internal citations omitted). Here, taking each non-moving party's facts as true, fact issues preclude summary judgment for either party. A reasonable jury could determine that Plaintiff inadvertently failed to tell Sheriff Castloo about her conversation with Deputy Bowring; conversely, a reasonable jury could also conclude that Plaintiff was purposely untruthful. This credibility determination rests with the jury and precludes summary judgment for either party on this element alone.

Further, a fact question exists as to element (4): whether Plaintiff was provided notice and opportunity to be heard prior to her termination. Defendants argue that "Sheriff Castloo gave [Plaintiff] another chance to answer him truthfully" regarding with whom she had spoken concerning her allegations against McGee, and that "Plaintiff knew that Sheriff Castloo would terminate anyone who lied." (Doc. No. 39 at 15.) Plaintiff has repeatedly maintained that she did not purposely lie to Sheriff Castloo, and had no intent to withhold information. (Doc. No. 56 at 6 (citing Ex. A, 157:19–21).) Further, it is unclear from the summary judgment evidence whether

Plaintiff was aware that the meeting was regarding her perceived misconduct and potential termination rather than McGee's alleged misconduct. (Ex. A at 131:6–25, 132:1–16, 179:4–8.)

Lastly, while Defendants contend that Plaintiff "never requested a name-clearing hearing and therefore no Defendant ever denied this request," Plaintiff had no explicit requirement to use the term "name-clearing hearing," or submit this request in writing. *Bledsoe*, 449 F.3d at 653. So long as Plaintiff petitioned her employer "in a manner that can be construed as asking for an opportunity to clear [her] name," this requirement is satisfied. *Id.* After she was informed of her termination, Plaintiff asked to speak with Sheriff Castloo regarding the reasons for her termination and was not allowed to do so. (Doc. No. 42, Ex. A at 156:17–21.) Plaintiff █████ ████████████████████████████████████████████████████████████████████ ███████, unlike the plaintiff in *Bledsoe*, who "did not ask to confront [his employer] in a public forum regarding the stigmatizing charges against him either before or after his separation from employment." *Bledsoe*, 449 F.3d at 653.

Defendants correctly note that "to the extent that Plaintiff argues that she was owed a hearing because she has a property right in the legitimate expectation of continued employment by virtue of Texas Government Code § 614.023(c)" that argument must fail. (Doc. No. 39 at 15.) As mentioned above, Texas Government Code Chapter 614 does not create a property interest that implicates the Fourteenth Amendment for the purposes of § 1983. However, issues of fact exist as to several elements of the seven-element "stigma-plus-infringement" test utilized by the Fifth Circuit, thus rendering summary judgment inappropriate. *Bledsoe*, 449 F.3d at 653. Accordingly, for the reasons stated above, it is **ORDERED** that both parties' motions for summary judgment on this claim (Doc. Nos. 39, 42) are **DENIED**.

### III. *Monell* Liability

"To state a claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Piotrowski v. City of Houston*, 51 F.3d 512, 515 (5th Cir. 1995) (citation and internal quotations omitted). A local government may be sued under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible." *Monell v. Dep't of Soc. Serv. of New York*, 436 U.S. 658, 694 (1978); *see also Bishop v. Arcuri*, 674 F.3d 456, 467 (5th Cir. 2012) ("[M]unicipal liability under section 1983 requires proof of three elements: (1) a policymaker; (2) an official policy; and (3) violation of constitutional rights whose moving force is the policy or custom.") (internal citations omitted). To be successful on a claim for violation of § 1983, the official policy or custom must cause the constitutional violation. *Id.* at 692. However, a municipality may not be liable under § 1983 on a *respondeat superior* theory; in other words, a government entity may not be liable under § 1983 simply by employing a tortfeasor. *Id.* at 691.

As discussed above, Plaintiff has pleaded a violation of her due process rights under the Fourteenth Amendment sufficient to survive summary judgment. Plaintiff argues that Wood County is liable for her § 1983 claims because all three elements of *Monell* liability have been met. (Doc. No. 42 at 14.) Fifth Circuit caselaw provides three ways of establishing a municipal policy for *Monell* liability:

> First, a plaintiff can show written policy statements, ordinances, or regulations. Second, a plaintiff can show a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy. Third, even a single decision may constitute municipal policy in rare circumstances when the official or entity possessing final policymaking authority for an action performs the specific act that forms the basis of the § 1983 claim.

*Webb v. Town of Saint Joseph*, 925 F.3d 209, 215 (5th Cir. 2019) (internal citations and quotations omitted). Plaintiff contends that Sheriff Castloo's actions fall into the third category because he made an employment decision as a state actor with final policymaking authority that deprived her of her constitutional right to due process. (Doc. No. 42 at 14 (citing *Brady v. Fort Bend Cty.*, 145 F.3d 691. 699 (5th Cir. 1998).) Defendant responds that "because there is no direct, causal link between any of Sheriff Castloo's actions and a constitutional deprivation," extending liability to Wood County is improper. (Doc. No. 49 at 15.)

Here, where Plaintiff has demonstrated that a constitutional violation occurred sufficient to survive summary judgment, Wood County's argument is unavailing. As discussed above, Sheriff Castloo's decision to terminate Plaintiff in association with stigmatizing charges without a name-clearing hearing, if taken as true, constitutes deprivation of her Fourteenth Amendment rights. Therefore, Sheriff Castloo's actions are directly and causally linked to Plaintiff's due process claim. Regarding personnel decisions within a sheriff's department, it is undisputed that the Fifth Circuit vests a sheriff with final policymaking authority sufficient to meet the requirements of *Monell*. Brady, 145 F.3d at 699; *see also Turner v. Upton Cty.*, 915 F.2d 133, 136 (5th Cir. 1990) (holding that a sheriff's "official conduct and decisions must necessarily be considered those of one whose edicts or acts may fairly be said to represent official policy" for which a county may be held responsible under § 1983) (internal quotations omitted)). Viewing the facts in the light most favorable to Plaintiff, a reasonable jury could conclude that Wood County is liable under *Monell* for Sheriff Castloo's actions, and accordingly the Court **DENIES** Defendant Wood County's motion for summary judgment (Doc. No. 39) regarding Plaintiff's due process claim**.**

## IV.    Qualified Immunity

The defense of qualified immunity protects government officials performing discretionary functions from "liability for civil damages insofar as their conduct does not violate clearly established rights which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Lytle v. Bexar County, Tex.*, 560 F.3d 404, 409 (5th Cir. 2009). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). "When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotation marks omitted). "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

To demonstrate the inapplicability of the qualified immunity defense, the plaintiff must satisfy a two-prong test. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The first prong is whether "the challenged conduct, viewed in the light most favorable to the plaintiff, would actually amount to a violation of [constitutional or] federal law." *Wernecke v. Garcia*, 591 F.3d 386, 392 (5th Cir. 2009) (citation omitted). The second is "whether the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004) (citations omitted). A court may consider the two-pronged inquiry in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

When applying the second prong, the court examines whether "the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft*, 563 U.S. at 741 (internal alterations and quotation marks omitted). The Fifth Circuit has observed that an official:

does not lose qualified immunity merely because a certain right is clearly established in the abstract. It is clearly established that the government may not deny due process or inflict cruel and unusual punishments, but those abstract rules give officials little practical guidance as to the legality of particular conduct. Qualified immunity should not be denied unless the law is clear in the more particularized sense that reasonable officials should be on notice that their conduct is unlawful.

*Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (internal quotation marks omitted).

The second prong of the qualified immunity test ensures that "law enforcement officials who reasonably but mistakenly commit a constitutional violation are entitled to immunity." *Bazan v. Hidalgo Cnty.,* 246 F.3d 481, 488 (5th Cir. 2001). "A government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *al–Kidd,* 563 U.S. at 741 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987) (alterations original)). The law is clearly established if a plaintiff is "able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Morgan v. Swanson,* 659 F.3d 359, 371–72 (5th Cir. 2011) (en banc) (internal quotation omitted); *Wilson v. Layne*, 526 U.S. 603, 617 (1999). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question *beyond debate*." *al–Kidd,* 563 U.S. at 741 (emphasis added).

Defendant Castloo contends that he is entitled to qualified immunity because the undisputed facts establish that he did not violate Plaintiff's constitutional due-process rights. (Doc. No. 39 at 21–24.) Thus, the burden shifts to Plaintiff to rebut the applicability of this defense. Plaintiff contends that she has properly pleaded the violation of her right to due process under the Fourteenth Amendment and that her right to a name-clearing hearing is clear under federal law and beyond question. (Doc. No. 42 at 13–14.)

The Supreme Court has recognized that where a person's good name, reputation, honor, or integrity is at stake because government action, "notice and an opportunity to be heard are essential.'" *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971). As the Court discussed above, Plaintiff has sufficiently pleaded a Fourteenth Amendment violation through her allegations that Defendants terminated her for lying and violating the chain of command without a name-clearing hearing or opportunity to speak on the charges, thereby permanently marring her record with a dishonorable discharge, depriving her of her liberty interest in her good name and reputation within the community, and limiting her future employment opportunities.[3] (Doc. No. 42 at 12–13; Ex. A at 159:1–9.). The Fifth Circuit law is clear on this point: "If the government discharges an employee amidst allegations of misconduct, the employee may have a procedural due process right to notice and an opportunity to clear [her] name" if she meets the seven-element "stigma-plus-infringement" test that, taking Plaintiff's facts as true, the Court has concluded Plaintiff met here. *Bledsoe*, 449 F.3d at 653. While fact questions may exist as to whether Plaintiff has conclusively established all seven elements—namely, whether the charges are indeed false—the fact that Plaintiff has a liberty interest in the opportunity to clear her name of stigmatizing charges has indeed been placed "beyond debate." *al–Kidd*, 563 U.S. at 741; *Constantineau*, 400 U.S. at 437. Accordingly, the Court finds that Plaintiff has successfully rebutted the defense of qualified immunity such that summary judgment would be improper. For the reasons discussed herein, the Court **DENIES** Defendant's Motion for summary judgment (Doc. No. 39) with respect to qualified immunity.

**CONCLUSION**

---

[3] Plaintiff has testified that she cannot find work "███████████████████████████," despite attempting to do so both within Wood County and in neighboring counties. (Ex. A at 159:1–9.)

Accordingly, for the reasons stated herein, the Court **ORDERS** that Defendants' motion (Doc. No. 39) is **GRANTED-IN-PART** and **DENIED-IN-PART** and that Plaintiff's motion (Doc. No. 42) is **DENIED.** Plaintiff's § 1983 claims under the First Amendment and Texas Government Code Chapter 614 are therefore **DISMISSED WITH PREJUDICE**, and her due process claim under the Fourteenth Amendment remains.

The parties have filed a join motion to abate all deadlines in this action pending a determination on the issue of qualified immunity (Doc. No. 67); as the issue of qualified immunity is determined in this order, the parties' motion (Doc. No. 67) is **DENIED AS MOOT.**

Within 7 days of the issuance of this Order, the parties shall jointly submit a proposed redacted version of this Order so that a public version can be made available.

**So ORDERED and SIGNED this 6th day of February, 2020.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE